

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

400 MARYLAND AVENUE, SW
WASHINGTON, DC 20202-1475

REGION XI
NORTH CAROLINA
SOUTH CAROLINA
VIRGINIA
WASHINGTON, D.C.

December 4, 2014

Dr. Jim Merrill
Superintendent
Wake County Public School System
5625 Dillard Drive
Cary, North Carolina 27518

Re: OCR Complaint No. 11-14-1176
Resolution Letter

Dear Dr. Merrill:

This letter is to notify you of the resolution of the complaint filed with the District of Columbia Office for Civil Rights (OCR), within the U.S. Department of Education (Department), on April 4, 2014 against Wake County Public Schools (the District), in particular, Lynn Road Elementary School (the School). The Complainant alleged that the School discriminated against her son (the Student) based on disability (Autism/Asperger Syndrome) and against her based on national origin (Russian). OCR initiated an investigation of the following allegations: (1) the School discriminated against the Student on the basis of disability by denying him a free appropriate public education (FAPE) when it failed to consider whether the Student could receive reading instruction in the regular education environment; and (2) the School discriminated against the Complainant on the basis of national origin when the Complainant was made to feel unwelcome at School because she did not consistently receive a response to correspondence; she was ignored during meetings; and the Student's Special Education teacher would not speak to the Complainant.

OCR initiated an investigation of the complaint pursuant to its authority to enforce Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. § 2000d, and its implementing regulation, at 34 C.F.R. Part 100, which prohibit discrimination on the bases of race, color, or national origin in activities or programs that receive federal financial assistance; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, and its implementing regulation, at 34 C.F.R. Part 104, which prohibit discrimination on the basis of disability in programs and activities that receive financial assistance from the Department; and Title II of the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. § 12131 et seq., and its implementing regulation, at 28 C.F.R. Part 35, which prohibit discrimination against qualified individuals with disabilities by public entities, including public educational systems. Because the District is a public entity and receives federal financial assistance, it is subject to the provisions of these laws and OCR has jurisdiction over it.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

www.ed.gov
Case 5:17-cv-00295-FL   Document 90-3   Filed 08/07/19   Page 1 of 5

**Background**

The Student is currently in third grade at Root Elementary School in the District. He has been identified as a student eligible to receive special education services based on his diagnosis with Autism and has an individualized education program (IEP). During the 2013-2014 school year, the Student attended second grade at the School, where he received the majority of his services in a special education classroom. He was integrated, with accommodations, into general education with his peers for recess/lunch, music, art, physical education, computer lab, science, and social studies. Between January and June 2014, the School conducted eight IEP team meetings in an effort to complete a re-evaluation and review of the Student's IEP. The Complainant attended all of the meetings. Three of the IEP team meetings were facilitated by the North Carolina Department of Public Instruction (NCDPI). On April 8, 2014, the parties participated in a mediation facilitated by NCDPI that resulted in an agreement signed by both parties. The agreement addressed substantive IEP issues, as well as communications protocol.

**Allegation 1**

With regard to academic setting, the Section 504 regulation, at 34 C.F.R. § 104.34(a), requires that a student with a disability be educated with their nondisabled peers to the maximum extent appropriate to the needs of the student with a disability.

OCR initiated an investigation into whether the School denied the Student FAPE by failing to consider whether he could receive reading instruction with regular education peers. However, on November 18, 2014, Counsel for the District notified OCR that the Complainant filed a petition for due process with NCDPI. After reviewing a copy of the petition currently pending with NCDPI, OCR determined that the Complainant raised the same allegation with NCDPI as was contained in her OCR complaint regarding the Student's reading instruction.

Under OCR's complaint processing procedures, OCR does not proceed to the resolution of a complaint when the same allegation has been filed with another federal, state, or local agency, or through a recipient's internal grievance procedures, and OCR anticipates that the agency will provide the complainant with a comparable resolution process. In this case, we anticipate that NCDPI will provide the Complainant with a resolution process comparable to that of OCR. Therefore, we are administratively closing allegation 1 of the complaint as of the date of this letter.

If the Complainant is dissatisfied with the results of the NCDPI proceedings, she may refile the allegation with OCR within 60 days of the completion of those proceedings or within 180 days of the last alleged discriminatory action. If the Complainant chooses to refile, OCR will generally not conduct its own investigation, but will determine whether the resolution was consistent with our regulatory standards, that is, whether all allegations were investigated, the appropriate legal standards were applied, and any secured remedies met OCR's standards.

**Allegation 2**

The Complainant alleged that the School discriminated against her based on her national origin by not giving credence to her concerns and questions or timely responding to her communications. The regulation implementing Title VI, 34 C.F.R. Part 100, provides that no individual shall, on the basis of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination in any program or activity that receives or benefits from federal

financial assistance. The regulation implementing Title VI specifies that recipients of federal financial assistance are prohibited from providing services or other benefits to an individual that are different from, or provided in a different manner than, those provided to others under the program on the basis of race, color, or national origin.

When investigating an allegation of different treatment based on race or national origin, OCR first determines whether the evidence is sufficient to establish an initial, or *prima facie*, case of discrimination. This requires evidence showing that Complainant was subjected to adverse treatment. To establish whether different treatment has occurred, OCR considers direct evidence as well as other facts that may show bias against individuals of a particular race or national origin. Only if OCR finds a *prima facie* case of different treatment do we then determine whether the recipient had a legitimate, nondiscriminatory reason for taking the action, and, if so, whether the recipient's reason is a pretext, or an excuse, for unlawful discrimination.

In this instance, to demonstrate that the Complainant was subjected to adverse treatment there must be sufficient evidence that she was treated less favorably than similarly situated parents of a different (non-Russian) national origin. Pursuant to a request for documents, the District provided OCR with copies of detailed meeting notes from the eight IEP meetings held during the 2013-2014 school year, as well as copies of hundreds of email exchanges between the Complainant and School and District staff. From the beginning of the school year, the Complainant emailed the School two to three times daily, often copying multiple parties. The emails were usually lengthy and sometimes took a confrontational tone. Beginning in October 2013, the principal of the School put in place a protocol regarding the Complainant's communications. The principal initially directed the Complainant to send all emails through her and arranged for weekly meetings with the Complainant, including other relevant staff, in order to try to address her questions and concerns. However, despite these provisions, the IEP meeting notes reflect that the parties continued to disagree about most issues related to the Student's education. As a result of the continuing disagreements, the parties participated in mediation on April 8, 2014, facilitated by NCDPI. The mediation covered a number of issues, including substantive IEP issues and communications protocol, and resulted in a signed Agreement between the Complainant and the District. Pursuant to the mediated agreement, the parties decided that there would be five parent-teacher conferences between the date of the agreement and the end of the school year and that all communications, other than daily email communications with the Student's teacher, would go through the principal and allow her 24 hours to respond. Thus, the documentation provided makes clear that, not only did the Complainant agree to the communications protocol in place, but she continued to have substantial opportunity to communicate with School staff.

OCR also requested information from the District regarding other parents at the School who had communicated in a comparable volume and tone as Complainant and how the School responded in those cases. The School replied that there were no other parents who communicated in a comparable volume and tone to the Complainant. The District further confirmed that the School had not placed limitations on the communications of any other parent.

OCR asked the Complainant if she could identify a parent of a different national origin who was treated more favorably. The Complainant responded that she observed other parents chatting with teachers in the hallway, outside the context of a formal parent-teacher conference. She also said she knew of another parent at a different school in the District who was able to freely email her child's teacher without limitation, though she could not provide OCR with the name of the parent. The Complainant was unable to provide any specific information to suggest that other parents of a different national origin were treated more favorably or had substantially greater opportunities to communicate

with School staff. As discussed above, there were frequent communications via email between School staff and the Complainant; the IEP meeting notes reflect the Complainant's active participation in meetings and indicate her areas of disagreement with School staff; and, consistent with the mediated agreement, the Complainant had regular access to the Student's teacher and the principal. Consequently, OCR determined that there is insufficient evidence that the Complainant was treated less favorably than similarly situated parents of a different national origin and, thus, there is no *prima facie* case of discrimination.

Nevertheless, the district communicated its legitimate reason for establishing a protocol for communications with the Complainant. The District maintains this was a reasonable response to the Complainant's extraordinary communication demands, in terms of volume, tone, and expectation for immediate and comprehensive responses. As stated above, the District provided OCR with copies of hundreds of emails the Complainant sent to school staff during the course of the year, including emails that took a confrontational or condescending tone towards staff. From October 2013 through early December 2013, the principal met weekly with the complainant and various staff members, largely in an effort to minimize the volume of emails and telephone calls. With the help of an NCDPI mediator, the parties ultimately agreed to a protocol for communications between April and June 2014, which included almost weekly parent-teacher conferences and the opportunity to email the principal with additional questions and concerns. Accordingly, OCR is closing allegation 2 because there is insufficient evidence to establish that the District discriminated against the Complainant based on national origin by unfairly curtailing her communications with School staff.

This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public. The Complainant may have the right to file a private suit in federal court whether or not OCR finds a violation.

This concludes OCR's investigation of the complaint. This letter should not be interpreted to address the District's compliance with any other regulatory provision or to address any issues other than those addressed in this letter. Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. If OCR receives such a request, we will seek to protect personally identifiable information that could reasonably be expected to constitute an unwarranted invasion of personal privacy if released, to the extent provided by law.

Please be advised that the District may not retaliate against an individual who asserts a right or privilege under a law enforced by OCR or who files a complaint, testifies, or participates in an OCR proceeding. If this happens, the individual may file a retaliation complaint with OCR.

We appreciate the District's help in resolving this matter. In particular, we want to thank the District's counsel, Mr. Stephen Rawson, for his quick and complete responses. If you have any questions, please contact Sara Clash-Drexler at (202) 453-5906 or sara.clash-drexler@ed.gov or Christa Cothrel at (202) 453-5926 or christa.cothrel@ed.gov.

Sincerely,

Alessandro Terenzoni
Team Leader, Team II
District of Columbia Office
Office for Civil Rights

cc: Mr. Stephen Rawson (via email)